AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 21-355 MB |
| The person of Jeffrey Alan Davis (DOB: | ) |
| XX-XX-1972) residing at 31241 N. | ) |
| Gecko Trail, San Tan Valley, Arizona | ) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona
*(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*
See Attachment B, incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before  December 27, 2021
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty in the District of Arizona_____.
*(name)*

N/A  ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  12-13-2021 @ 8pm

City and state:   Phoenix Arizona

Michelle H. Burns, United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1

<u>**ATTACHMENT A - Person**</u>

2

<u>**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS**</u>

3

<u>**TO BE SEARCHED**</u>

4

<u>**PROPERTY:**</u>

5 Jeffrey Alan Davis, date of birth XX-XX-1972, Social Security Number XXX-XX-0452,

6 Arizona Driver's License Number D01689445, 31241 N. Gecko Trail, San Tan Valley, Arizona,

7 85143, for the property and personal belongings (including computers and computer media).

8 <u>**ITEMS:**</u>

9 Search for all items listed within ATTACHMENT B.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        **ATTACHMENT B**

2     **ITEMS TO BE SEARCHED AND SEIZED**

3  1.    Images of child pornography and files containing images of child pornography in

4  any form wherever it may be stored or found including:

5       a.     Any computer, computer system  and related peripherals; cellular phones,

6  personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software

7  and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems,

8  tape drives, disk applications programs, data disks, system disk operating systems,

9  magnetic media floppy disks, hardware and software operating manuals, tape systems and

10  hard drive and other computer-related operation equipment, firewalls, switches, hubs,

11  wireless access points, gaming consoles, web cameras, uninterrupted power supplies,

12  hardware device power supplies, tape backup drives, digital video recorders, undeveloped

13  photographic film, slides, and other visual depictions of such Graphic Interchange formats

14  (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices

15  including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory

16  devices, and other storage mediums; any input/output peripheral devices, including

17  computer passwords and data security devices an computer-related documentation, and any

18  hardware/software manuals related to or used to: visually depict child pornography; contain

19  information pertaining to the interest in child pornography; distribute, receive, or possess

20  child pornography;

21       b.     Books and magazines containing child pornography;

22       c.     Originals, copies, and negatives of visual depictions of child pornography;

23  and

24       d.     Motion pictures, films, videos, and other recordings of visual depictions of

25  child pornography.

26  2.    Information, correspondence, records, documents or other materials pertaining to the

27  possession, receipt or distribution of child pornography, that were transmitted or received

28

1  using computer, some other facility or means of interstate or foreign commerce, common
2  carrier, of the U.S. mail including:

3       a.      Envelopes, letters and other correspondence including electronic mail, chat
4  logs, and electronic messages, establishing possession, access to, or transmission through
5  interstate or foreign commerce, including by U.S. mail or by computer, of child
6  pornography;

7       b.      Books, ledgers and records bearing on the productions, reproduction, receipt,
8  shipment, orders, requests, trades, purchases or transactions of any kind involving the
9  transmission through interstate or foreign commerce, including by U.S. mail or by
10  computer of child pornography;

11       c.      Records, documents, or materials, including any and all address books,
12  mailing lists, supplier lists, mailing address labels, and documents and records pertaining
13  to the preparation, purchase and acquisition of names or lists of names to be used in
14  connections with the purchase, sale, trade or transmission of child pornography, through
15  interstate commerce including by U.S. mail or by computer;

16       d.      Records, documents or materials, including address books, names and lists
17  of names and addresses of minors visually depicted in child pornography;

18       e.      Records of Internet usage, including user names and e-mail addresses and
19  identities assumed for the purposes of communication on the Internet to purchase, sell,
20  trade, transmit or acquire child pornography.  These records may include ISP records, i.e.,
21  billing and subscriber records, chat room logs, e-mail messages and include electronic files
22  in a computer and on other data storage mediums, including CDs or DVDs.

23  3.    Credit card information which evidences ownership or use of the computer
24  equipment found in the above residence, including payment for Internet access and
25  computers or electronic media or other storage devices, disks, CD-ROMS, or similar
26  containers for electronic evidence.

27  4.    Records evidencing occupancy or ownership of the premises described above,
28

1    including utility and telephone bills, mail, envelopes or addressed correspondence.

2    5.    Records or other items which evidence ownership or use of computer equipment
3    found in the above residence, including sales receipts, bills for Internet access and
4    handwritten notes.

5    6.    Any computer hard drive or other electronic media (COMPUTER), physically
6    located at the residence or virtually connected to any computer within the residence, found
7    to contain information otherwise called for by this warrant:

8    a.    Evidence of who used, owned, or controlled the COMPUTER at the time the
9    things described in this warrant were created, edited, or deleted, such as logs, registry
10    entries, saved usernames and passwords, documents, and browsing history;

11    b.    Evidence of software that would allow others to control the COMPUTER,
12    such as viruses, Trojan horses, and other forms of malicious software;

13    c.    Evidence of the lack of such malicious software;

14    d.    Evidence of the attachment to the COMPUTER of other storage devices,
15    disks, CD-ROMS, or similar containers for electronic evidence;

16    e.    Evidence of the times the COMPUTER was used;

17    f.    Passwords, encryption keys, and other access devices that may be necessary
18    to access the COMPUTER.

19    7.    Photographs of Jeffrey Alan Davis' hands.

20    8.    Underwear worn by the child in the videos sent to the undercover TFO – appear to
21    be gray or purple underwear with light blue or white polka dots.

22    9.    Photographs of any child's bedroom including furnishings, bed coverings, and
23    clothing.

24

25

26

27

28

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>The person of Jeffrey Alan Davis (DOB:<br>XX-XX-1972) residing at 31241 N. Gecko<br>Trail, San Tan Valley, Arizona | )<br>)<br>)<br>)<br>)<br>)    Case No.   21- 355 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated by reference.

located in the _____ District of _____ Arizona _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:
See attached Affidavit, incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____*Brett Day*_____
Reviewed by Brett A. Day, AUSA

_____
*Applicant's Signature*

**Candace Rose, Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12 - 13 - 2021

_____
*Judge's signature*

City and state:  Phoenix, Arizona

Michelle H. Burns, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A - Person**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS**

**TO BE SEARCHED**

**PROPERTY:**

Jeffrey Alan Davis, date of birth XX-XX-1972, Social Security Number XXX-XX-0452, Arizona Driver's License Number D01689445, 31241 N. Gecko Trail, San Tan Valley, Arizona, 85143, for the property and personal belongings (including computers and computer media).

**ITEMS:**

Search for all items listed within ATTACHMENT B.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.    Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

     a.    Any computer, computer system  and related peripherals; cellular phones, personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, tape drives, disk applications programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer-related operation equipment, firewalls, switches, hubs, wireless access points, gaming consoles, web cameras, uninterrupted power supplies, hardware device power supplies, tape backup drives, digital video recorders, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory devices, and other storage mediums; any input/output peripheral devices, including computer passwords and data security devices an computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; distribute, receive, or possess child pornography;

     b.    Books and magazines containing child pornography;

     c.    Originals, copies, and negatives of visual depictions of child pornography; and

     d.    Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.    Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received

1   using computer, some other facility or means of interstate or foreign commerce, common
2   carrier, of the U.S. mail including:

3       a.    Envelopes, letters and other correspondence including electronic mail, chat
4   logs, and electronic messages, establishing possession, access to, or transmission through
5   interstate or foreign commerce, including by U.S. mail or by computer, of child
6   pornography;

7       b.    Books, ledgers and records bearing on the productions, reproduction, receipt,
8   shipment, orders, requests, trades, purchases or transactions of any kind involving the
9   transmission through interstate or foreign commerce, including by U.S. mail or by
10   computer of child pornography;

11       c.    Records, documents, or materials, including any and all address books,
12   mailing lists, supplier lists, mailing address labels, and documents and records pertaining
13   to the preparation, purchase and acquisition of names or lists of names to be used in
14   connections with the purchase, sale, trade or transmission of child pornography, through
15   interstate commerce including by U.S. mail or by computer;

16       d.    Records, documents or materials, including address books, names and lists
17   of names and addresses of minors visually depicted in child pornography;

18       e.    Records of Internet usage, including user names and e-mail addresses and
19   identities assumed for the purposes of communication on the Internet to purchase, sell,
20   trade, transmit or acquire child pornography. These records may include ISP records, i.e.,
21   billing and subscriber records, chat room logs, e-mail messages and include electronic files
22   in a computer and on other data storage mediums, including CDs or DVDs.

23   3.    Credit card information which evidences ownership or use of the computer
24   equipment found in the above residence, including payment for Internet access and
25   computers or electronic media or other storage devices, disks, CD-ROMS, or similar
26   containers for electronic evidence.

27   4.    Records evidencing occupancy or ownership of the premises described above,
28

1   including utility and telephone bills, mail, envelopes or addressed correspondence.

2   5.      Records or other items which evidence ownership or use of computer equipment

3   found in the above residence, including sales receipts, bills for Internet access and

4   handwritten notes.

5   6.      Any computer hard drive or other electronic media (COMPUTER), physically

6   located at the residence or virtually connected to any computer within the residence, found

7   to contain information otherwise called for by this warrant:

8          a.      Evidence of who used, owned, or controlled the COMPUTER at the time the

9   things described in this warrant were created, edited, or deleted, such as logs, registry

10   entries, saved usernames and passwords, documents, and browsing history;

11          b.      Evidence of software that would allow others to control the COMPUTER,

12   such as viruses, Trojan horses, and other forms of malicious software;

13          c.      Evidence of the lack of such malicious software;

14          d.      Evidence of the attachment to the COMPUTER of other storage devices,

15   disks, CD-ROMS, or similar containers for electronic evidence;

16          e.      Evidence of the times the COMPUTER was used;

17          f.      Passwords, encryption keys, and other access devices that may be necessary

18   to access the COMPUTER.

19   7.      Photographs of Jeffrey Alan Davis' hands.

20   8.      Underwear worn by the child in the videos sent to the undercover TFO – appear to

21   be gray or purple underwear with light blue or white polka dots.

22   9.      Photographs of any child's bedroom including furnishings, bed coverings, and

23   clothing.

24

25

26

27

28

## ELECTRONICALLY SUBMTITED AFFIDAVIT IN SUPPORT
## OF SEARCH WARRANT

I, Candace M. Rose, Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows, to wit:

## INTRODUCTION

The facts of this case, as more fully detailed herein, are that on dates between December 9, 2021 and December 13, 2021, a Kik user with a username of "alandavis1661" and display name of "Alan Davis" was a member of a Kik Group (referred to in this affidavit as "Group A").   An undercover Task Force Officer (TFO) with the Metropolitan Police Department-Federal Bureau of Investigation (MPD-FBI) Child Exploitation Task Force was part of this Group and observed members post videos and images that were sexual in nature, with many of them depicting minors. On December 9, 2021, "alandavis1661" initiated a private chat with the undercover TFO.   On December 13, 2021, "alandavis1661" sent several videos to the undercover TFO wherein he was masturbating near and touching a minor female who he states is his five year old daughter. "Alandavis1661" sent the TFO a video where he was holding two fingers up in front of the child to show that he had immediate access to the child.   Investigative steps determined that the Kik account with the username "alandavis1661" was established with an email account "alandavis1488@gmail.com."   Investigative steps also determined that the IP address 70.162.61.146 logged into the Kik account multiple times between November 13, 2021 and December 13, 2021.   The IP address 70.162.61.146 is registered to the Cox Communications residential account in the name of Lisa Madrid at 31241 N. Gecko Trail, San Tan Valley, Arizona 85143.   Record checks identified that JEFFREY ALAN DAVIS, Lisa's husband, also resides at the house.   Record checks also revealed that JEFFREY ALAN DAVIS has a vehicle co-registered in his name--a 2016 Hyundai Tucson bearing Arizona license plate CTV5927.   Lisa M. Davis is the co-registrant.   Surveillance on December 13, 2021, revealed an individual believed to be JEFFREY ALAN DAVIS loading items into the trunk of a maroon Hyundai sedan bearing California license plate 8VSP705.   This registration on this vehicle resolves to PV Holding Corp., which is believed to be a part of Avis Rental Cars.   I am requesting that the

1    Court issue a warrant to search 31241 N. Gecko Trail, San Tan Valley, Arizona 85143, the person

2    of JEFFREY ALAN DAVIS for digital devices, and the listed two vehicles, for digital devices

3    to locate child pornography and conclusively identify the individual transmitting child

4    pornography.

**PRELIMINARY BACKGROUND INFORMATION**

6    1.     I am a Special Agent with the FBI assigned to the Phoenix Division.   I have been so

7    employed for eighteen years and I am specifically assigned to conduct investigations pursuant

8    to the FBI's Innocent Images National Initiative (IINI), which focuses on crimes where

9    computers and the Internet are used in the sexual exploitation of children.   I am responsible

10   for conducting federal and international investigations relating to crimes involving the sexual

11   exploitation of children.   I have received basic and on-the-job training in the investigation of

12   cases involving the sexual exploitation of children.   The statements contained in this Affidavit

13   are based on my experience and background as a Special Agent and on information provided

14   by other law enforcement agents.

15   2.     The purpose of this application is to seize evidence, more particularly described in

16   Attachment B, of violations of 18 U.S.C. §§ 2252(a)(2) which makes it a crime to distribute child

17   pornography, violations of 18 U.S.C. §§ 2252(a)(4)(B), which makes it a crime to possess, or

18   knowingly access with intent to view child pornography, and violation of 18 U.S.C. §§ 2251(a)

19   and 2251(e), which makes it a crime to produce child pornography.

20   3.     Because this Affidavit is being submitted for the limited purpose of securing a search

21   warrant, I have not included each and every fact known to me concerning this investigation.   I

22   have set forth only those facts that are necessary to establish probable cause to believe that

23   evidence of violations of 18 U.S.C. §§ 2251 and 2252 is located at 31241 N. Gecko Trail, San

24   Tan Valley, Arizona 85143 ("SUBJECT PREMISES"), more particularly described in

25   Attachment A of the residential search warrant, within a computer and related peripherals and

26   computer media found at the SUBJECT PREMISES; is located on JEFFREY ALAN DAVIS,

27   and any property and personal belongings (including computers and computer media), more

28   particularly described in Attachment A of the person warrant; and is located in the vehicle

1   registered to JEFFREY ALAN DAVIS, a 2016 Hyundai Tucson bearing Arizona license plate
2   CTV5927, and the vehicle in JEFFREY ALAN DAVIS' control, a Hyundai sedan bearing
3   California license plate 8VSP705, and any property and personal belongings (including
4   computers and computer media), more particularly described in Attachment A of the vehicle
5   warrant.

## DEFINITIONS

7   4.    The following non-exhaustive list of definitions applies to this Affidavit and Attachments
8   A and B (collectively referred to as "warrant"):

9       a.    "Child Pornography" is any visual depiction of sexually explicit conduct where (a)
10  the production of the visual depiction involved the use of a minor engaged in sexually explicit
11  conduct, (b) the visual depiction is a digital image, computer image, or computer-generated
12  image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct,
13  or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable
14  minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

15      b.    "Child Erotica" means materials or items that are sexually arousing to persons having a
16  sexual interest in minors, but that are not, in and of themselves, obscene or illegal.   In contrast
17  to "child pornography," this material does not necessarily depict minors in sexually explicit
18  poses or positions.   Some of the more common types of child erotica include photographs that
19  are not sexually explicit, drawings, sketches, fantasy writing, and diaries.   See Kenneth V.
20  Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.   Federal courts have recognized
21  the evidentiary value of child erotica and its admissibility in child pornography cases.   See
22  United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual
23  satisfaction from and collecting non-sexual photographs of children admissible to show intent
24  and explain actions of defendant); United States v. Riccardi, 258 F.Supp.2d 1212 (D. Kan., 2003)
25  (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

26      c.    "Visual depictions" include undeveloped film and videotape, and data stored on
27  computer disk or by electronic means, which is capable of conversion into a visual image.   See
28  18 U.S.C. § 2256(5).

d. "Minor" means any person under the age of eighteen years.   See 18 U.S.C. § 2256(1).

e. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.   See 18 U.S.C. § 2256(2).

f. "Computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."   See 18 U.S.C. § 1030(e)(1).

g. "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.   Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

h. "Computer software" is digital information which can be interpreted by a computer and any of its related components to direct the way they work.   Computer software is stored in electronic, magnetic or other digital form.   It commonly includes programs to run operating systems, applications and utilities.

i. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data.   Data security devices may consist of hardware, software or other programming code.   A password (a string

1  of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data

2  security devices.  Data security hardware may include encryption devices, chips and circuit

3  boards.  Data security software of digital code may include programming code that creates

4  "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data

5  security software or code may also encrypt, compress, hide or "booby-trap" protected data to

6  make it inaccessible or unusable, as well as reverse the progress to restore it.

7      k.  "Internet Service Providers" (ISPs) are commercial organizations, which provide

8  individuals and businesses access to the Internet.  ISPs provide a range of functions for their

9  customers including access to the Internet, web hosting, e-mail, remote storage and co-location

10  of computers and other communications equipment.  ISPs can offer various means to access the

11  Internet, including telephone based dial-up, broadband based access via a digital subscriber line

12  (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs typically

13  charge a fee based upon the type of connection and volume of data, called bandwidth that the

14  connection supports.  Many ISPs assign each subscriber an account name such as a user name

15  or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a

16  password for the account.   By using a computer equipped with a telephone or cable modem, the

17  subscriber can establish communication with an ISP over a telephone line or through a cable

18  system, and can access the Internet by using his or her account name and password.

19      l.  "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless

20  of whether those subscribers are individuals or entities).  These records may include account

21  application information, subscriber and billing information, account access information (often

22  times in the form of log files), e-mail communications, information concerning content uploaded

23  and/or stored on or via the ISP's servers and other information, which may be stored both in

24  computer data format and in written or printed record format.  ISPs reserve and/or maintain

25  computer disk storage space on their computer system for their subscribers' use.  This service

26  by ISPs allows for both temporary and long-term storage of electronic communications and

27  many other types of electronic data and files.

28      m.  "Internet Protocol address" (IP address) refers to a unique number used by a computer

1   to access the Internet.   IP addresses can be dynamic, meaning that the Internet Service Provider

2   (ISP) assigns a different unique number to a computer every time it accesses the Internet.   IP

3   addresses might also be static, if an ISP assigns a user's computer a particular IP address which

4   is used each time the computer accesses the Internet.

5          n.   The terms "records," "documents" and "materials" include all information recorded in

6   any form, visual or aural, and by any means, whether in hand-made form (including writings,

7   drawings, painting), photographic form (including microfilm, microfiche, prints, slides,

8   negatives, videotapes, motion pictures, photocopies), mechanical form (including phonograph

9   records, printing, typing) or electrical, electronic or magnetic form (including tape recordings,

10  cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard

11  disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media

12  Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators,

13  electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts

14  from any magnetic, electrical or electronic storage device).

15         o.   "Digital device" includes any electronic system or device capable of storing and/or

16  processing data in digital form, including the following: central processing units; laptop or

17  notebook computers; PDAs; wireless communication devices such as telephone paging devices,

18  beepers and mobile telephones; peripheral input/output devices such as keyboards, printers,

19  scanners, plotters, monitors and drives intended for removable media; related communications

20  devices such as modems, cables and connections; storage media such as hard disk drives, floppy

21  disks, compact disks, magnetic tapes and memory chips; and security devices.

22         p.   "Image" or "copy" refers to an accurate reproduction of information contained on an

23  original physical item, independent of the electronic storage device.   "Imaging" or "copying"

24  maintains contents, but attributes may change during the reproduction.

25         q.   "Hash value" refers to a mathematical algorithm generated against data to produce a

26  numeric value that is representative of that data.   A hash value may be run on media to find the

27  precise data from which the value was generated.   Hash values cannot be used to find other data.

28         r.   "Steganography" refers to the art and science of communicating in a way that hides the

existence of the communication. It is used to hide a file inside another. For example, a child pornography image can be hidden inside another graphic image file, audio file or other file format.

s.   "Compressed file" refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

t.   "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address.   For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32.   Domain names are typically strings of alphanumeric characters with each level delimited by a period.   Each level, read backwards - from right to left- further identifies parts of an organization.   Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations.   Second level names will further identify the organization.   For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice.   Additional levels may exist as needed until each machine is uniquely identifiable.   For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

u.   "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers.   Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.   Logs are often named based on the types of information they contain.   For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

v.   "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

w.   "Website" consists of textual pages of information and associated graphic images.   The

1  textual information is stored in a specific format known as Hyper-Text Mark-up Language
2  (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport
3  Protocol (HTTP).

4      x.  "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique
5  address for a file that is accessible on the Internet.  For example, a common way to get to a
6  website is to enter the URL of the website's home page file in the Web browser's address line.
7  Additionally, any file within that website can be specified with a URL.   The URL contains the
8  name of the protocol to be used to access the file resource, a domain name that identifies a
9  specific computer on the Internet, and a pathname, a hierarchical description that specifies the
10  location of a file in that computer.

11                 **BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY**
12                          **AND ONLINE CHILD EXPLOITATION**

13  5.  Based upon my knowledge, training and experience in online child exploitation and child
14  pornography investigations, as well as the experience and training of other law enforcement
15  officers with whom I have had discussions, I have learned the following:

16      a.  Computers and computer technology have revolutionized the way in which child
17  pornography is produced, distributed, stored and communicated as a commodity and a further
18  tool of online child exploitation.

19      b.  Individuals can transfer photographs from a camera onto a computer-readable format
20  with a variety of devices, including scanners, memory card readers, or directly from digital
21  cameras.

22      c.  Modems allow computers to connect to another computer through the use of telephone,
23  cable, or wireless connection.   Electronic contact can be made to literally millions of computers
24  around the world.

25      d.  The capability of a computer to store images in digital form makes the computer itself
26  an ideal repository for child pornography.   As explained further below, the storage capacity of
27  electronic media used in home computers has increased tremendously within the last several
28  years.   These drives can store extreme amounts of visual images at very high resolution.

e.  The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children. f.

Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.   And even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

g.  As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media used for these purposes.   Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.   However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).   In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.   Such information is often maintained for very long periods of time until overwritten by other data.

h.  The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge.   Even if the computer user is sophisticated and understands this automatic storage of information on his/her computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the computer media.   As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer

1  media despite, and long after, attempts at deleting it.   A thorough search of this media could

2  uncover evidence of receipt, distribution and possession of child pornography.

3      i.   Data that exists on a computer is particularly resilient to deletion.   Computer files or

4  remnants of such files can be recovered months or even years after they have been downloaded

5  onto a hard drive, deleted or viewed via the Internet.   Electronic files downloaded to a hard

6  drive can be stored for years at little to no cost.   Even when such files have been deleted, they

7  can be recovered months or years later using readily-available forensic tools.   When a person

8  "deletes" a file on a home computer, the data contained in the file does not actually disappear,

9  rather, the data remains on the hard drive until it is overwritten by new data.   Therefore, deleted

10 files or remnants of deleted files, may reside in free space or slack space – that is, in space on

11 the hard drive that is not allocated to an active file or that is unused after a file has been allocated

12 to a set block of storage space for long periods of time before they are overwritten.   In addition,

13 a computer's operating system may also keep a record of deleted data in a "swap" or "recovery"

14 file.   Similarly, files that have been viewed via the Internet are automatically downloaded into

15 a temporary Internet directory or cache.   The browser typically maintains a fixed amount of

16 hard drive space devoted to these files, and the files are only overwritten as they are replaced

17 with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic

18 file from a hard drive depends less on when the file was downloaded or viewed and more on a

19 particular user's operating system, storage capacity, and computer habits.

20          **BACKGROUND ON CELLULAR PHONE AND CHILD PORNOGRAPHY**

21                      **AND ONLINE CHILD EXPLOITATION**

22 6.    Based upon my knowledge, training and experience in online child exploitation and child

23 pornography investigations, as well as the experience and training of other law enforcement

24 officers with whom I have had discussions, I have learned the following:

25      a.  Cellular telephones have revolutionized the way in which child pornography is

26 produced, distributed, stored and communicated as a commodity and a further tool of online

27 child exploitation.

28      b.  A cellular telephone is a handheld wireless device used for voice and data

communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c.   The capability of a cellular telephone to store images in digital form makes the cellular telephone itself an ideal repository for child pornography.   As explained further below, the storage capacity of electronic media used in home cellular telephones has increased tremendously within the last several years.   These drives can store extreme amounts of visual images at very high resolution.

d.   The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

e.   Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of cellular telephone files in any variety of formats.   A user can set up an online storage account from any cellular telephone with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's cellular telephone.   And even in cases where online storage is used, evidence of child pornography can be found on the user's cellular telephone in most cases.

f.   The interaction between software applications and the cellular telephone operating

systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a cellular telephone hard drive without the user's knowledge.   Even if the cellular telephone user is sophisticated and understands this automatic storage of information on his/her cellular telephone's storage, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the cellular telephone media.   As a result, digital data that may have evidentiary value to this investigation could exist in the user's cellular telephone media despite, and long after, attempts at deleting it. A thorough search of this media could uncover evidence of receipt, distribution and possession of child pornography.

## BACKGROUND ON KIK MESSENGER

7.    Kik Messenger ("Kik") is an instant messaging application for mobile devices. The application is available on most iOS, Android, and Windows phone operating systems free of charge.   Kik uses a smartphone's data plan or Wi-Fi to transmit and receive messages.   Kik allows users to share photographs, sketches, mobile web-pages, linked internet files and other content.

8.    Kik subscribers obtain an account by registering with Kik.   During the registration process, Kik asks subscribers to provide basic personal information and to select a username.   During this process, Kik registers date, time, internet protocol (IP) address and device related information.   The username is the only unique identifier used by Kik.   According to the Kik Law Enforcement Guide, a Kik username is unique, can never be replicated and can never be changed.

## BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN CHILD PORNOGRAPHY AND CHILD EXPLOITATION INVESTIGATIONS

9.    Based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that segregating information before commencement of the review of digital evidence by the examining agent is inconsistent with the evidence assessment process in child pornography and

1  online child exploitation investigations.   This is true in part because the items to be searched
2  will not only contain child pornography but also will contain the identity of the user/possessor
3  of the child pornography as well as evidence as to the programs and software used to obtain the
4  child pornography, which may be located throughout the areas to be searched.

5       a.     As further described in Attachment A, this warrant seeks permission to locate not
6  only computer files that might serve as direct evidence of the crimes described in the warrant,
7  but also for evidence that establishes how computers were used, the purpose of their use, and
8  who used them.   Additionally, the warrant seeks information about the possible location of other
9  evidence.

10      b.     As described above and in Attachment A, this application seeks permission to search
11  and seize certain records that might be found in the SUBJECT PREMISES, in whatever form
12  they are found.   One form in which the records might be found is stored on a computer's hard
13  drive, or other electronic media.   Some of these electronic records might take the form of files,
14  documents, and other data that is user-generated.   Some of these electronic records, as explained
15  below, might take a form that becomes meaningful only upon forensic analysis.

16      c.     Although some of the records called for by this affidavit might be found in the form
17  of user-generated documents (such as word processor, picture and movie files), computer hard
18  drives can contain other forms of electronic evidence that are not user-generated.   In particular,
19  a computer hard drive may contain records of how a computer has been used, the purposes for
20  which it was used and who has used these records, as described further in the attachments.   For
21  instance, based upon my knowledge, training and experience, as well as information related to
22  me by agents and others involved in the forensic examination of digital devices, I know the
23  following:

24           i.  Data on the hard drive not currently associated with any file can provide
25               evidence of a file that was once on the hard drive but has since been deleted
26               or edited, or of a deleted portion of a file (such as a paragraph that has been
27               deleted from a word processing file).

28           ii. Virtual memory paging systems can leave traces of information on the

hard drive that show what tasks and processes the computer were recently in use.

iii.    Web browsers, e-mail programs and chat programs store configuration information on the hard drive that can reveal information such as online nicknames and passwords.

iv.    Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices and the times the computer was in use.

v.    Computer file systems can record information about the dates files were created and the sequence in which they were created.   This information may be evidence of a crime or indicate the existence and location of evidence in other locations on the hard drive.

d.  Further, in finding evidence of how a computer has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity.  For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, and, for example, by reviewing the Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from computer usage during times related to the criminal activity.

e.  Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data.   Evidence of the absence

1    of particular data on a digital device is not segregable from the digital device.

2        f.   The types of evidence described above may be direct evidence of a crime, indirect

3    evidence of a crime indicating the location of evidence or a space where evidence was once

4    located, contextual evidence identifying a computer user and contextual evidence excluding a

5    computer user.   All of these types of evidence may indicate ownership, knowledge and intent.

6

7        g.   This type of evidence is not "data" that can be segregated, that is, this type of data cannot

8    be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to

9    investigators.   Rather, evidence of this type is a conclusion, based on a review of all available

10   facts and the application of knowledge about how a computer behaves and how computers are

11   used.   Therefore, contextual information is necessary to understand the evidence described in

12   Attachment A also falls within the scope of the warrant.

13                          **SEARCH METHODOLOGY TO BE EMPLOYED**

14   10.   As noted within this search warrant, it would be extremely difficult, if not impossible to

15   conduct a thorough on-site review of all of the potential evidence in this case.   Given these

16   constraints, the search methodology to be employed is as follows:

17       a.   All computers, computer hardware and any form of electronic storage that could contain

18   evidence described in this warrant will be seized for an off-site search for evidence that is

19   described in the attachments of this warrant. It is anticipated that mirror copies or images of such

20   evidence will be made if the failure to do so could otherwise potentially alter the original

21   evidence.

22       b.   Consistent with the information provided within this affidavit, contextual information

23   necessary to understand the evidence, to identify the user/possessor of the child pornography,

24   and to establish admissibility of the evidence in subsequent legal proceedings will also be sought

25   by investigative agents.

26       c.   Additional techniques to be employed in analyzing the seized items will include (1)

27   surveying various file directories and the individual files they contain; (2) opening files to

28   determine their contents; (3) scanning storage areas, (4) performing key word searches through

1  all electronic storage areas to determine whether occurrences of language contained in such

2  storage areas exist that are likely to appear in the evidence described in this affidavit and its

3  attachments, and (5) performing any other data analysis techniques that may be necessary to

4  locate and retrieve the evidence described in this affidavit and its attachments.

5  11.   Because it is expected that the computers, computer hardware and any form of electronic

6  storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3)

7  contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence

8  will not be returned to the owner and that it will be either forfeited or ultimately destroyed in

9  accordance with the law at the conclusion of the case.

10     a.   Because of the large storage capacity as well as the possibility of hidden data within the

11  computers, computer hardware and any form of electronic storage media, it is anticipated that

12  there will be no way to ensure that contraband-free evidence could be returned to the

13  user/possessor of the computer, computer hardware or any form of electronic storage media,

14  without first wiping such evidence clean. Wiping the original evidence clean would mean that

15  the original evidence would be destroyed and thus, would be detrimental to the investigation and

16  prosecution of this case.

17     b.   Further, because investigators cannot anticipate all potential defenses to the offenses in

18  this affidavit, and as such, cannot anticipate the significance of the evidence that has been

19  lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by

20  law enforcement until the conclusion of legal proceedings or until other order of the court.

21     c.   If after careful inspection investigators determine that such computers, computer

22  hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit

23  of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence

24  of the person who committed the offense and under what circumstances the offense was

25  committed, then such items seized will be returned.

26  **CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE DISTRIBUTION OF**

27  **CHILD PORNOGRAPHY**

28  12.   Based upon my knowledge, experience, and training in child pornography investigations,

1   and the training and experience of other law enforcement officers with whom I have had
2   discussions, I know there are certain characteristics common to individuals involved in the
3   possession and distribution of child pornography.   Those who possess and distribute child
4   pornography:

5       a. May receive sexual gratification, stimulation, and satisfaction from contact with
6   children; or from fantasies they may have viewing children engaged in sexual activity or in
7   sexually suggestive poses, such as in person, in photographs, or other visual media; or from
8   literature describing such activity.

9       b. May collect sexually explicit or suggestive materials, in a variety of media, including
10   photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other
11   visual media.   Such individuals oftentimes use these materials for their own sexual arousal and
12   gratification.   Further, they may use these materials to lower the inhibitions of children they are
13   attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual
14   acts.

15       c. May possess and maintain their "hard copies" of child pornographic material, that is,
16   their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing
17   lists, books, tape recordings, etc., in the privacy and security of their home or some other secure
18   location.   These individuals typically retain pictures, films, photographs, negatives, magazines,
19   correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many
20   years.

21       d. May maintain their collections that are in a digital or electronic format in a safe, secure
22   and private environment, such as a computer and surrounding area.   These collections are often
23   maintained for several years and are kept close by, usually at the individual's residence, to enable
24   the collector to view the collection, which is valued highly.

25       e. May correspond with and/or meet others to share information and materials; rarely
26   destroy correspondence from other child pornography distributors/collectors; conceal such
27   correspondence as they do their sexually explicit material; and often maintain lists of names,
28   addresses, and telephone numbers of individuals with whom they have been in contact and who

1    share the same interests in child pornography.

2       f.  May prefer not to be without their child pornography for any prolonged time period.

3    This behavior has been documented by law enforcement officers involved in the investigation

4    of child pornography throughout the world.

5    **DETAILS OF THE INVESTIGATION**

6    13.  Between December 9, 2021 and December 13, 2021, an undercover Task Force Officer

7    (TFO) with the Metropolitan Police Department-Federal Bureau of Investigation (MPD-FBI) in

8    Washington D.C., Child Exploitation Task Force was part of a Kik messenger chat group

9    hereinafter referred to as Group A.  [The actual name of the group is known to your affiant, but

10    is being redacted in order to protect other ongoing investigations].  Group A was comprised of

11    members who appeared to have a sexual interest in children, particularly their daughters, and/or

12    child pornography.  Participants in this chat group shared images and videos that contained

13    child erotica and other child exploitative material.

14    14.  An individual utilizing the Kik username "alandavis1661" with a display name of "Alan

15    Davis" was a member of Group A.

16    15.  On approximately December 9, 2021, "alandavis1661" sent a private message to the

17    undercover TFO.  The user asked, "How old is your lil one" and stated his were 15 and 5.  User

18    "alandavis1661" stated he was currently in her room while she was at school and was "stroking."

19    He then sent a video which showed what appeared to be a young girl's bedroom, which contained

20    a dollhouse a bed comforter with a pink princess, and a doll.  An adult male was masturbating

21    his penis in the video.  The video appeared to be taken by the adult male who was masturbating.

22    16.  The undercover TFO sent a few images of his purported 8 year-old daughter during the

23    course of the chat conversation when requested by "alandavis1661".  [The images sent by the

24    undercover TFO did not depict a real child].

25    17.  On December 13, 2021, "alandavis1661" sent another video to the undercover TFO which

26    depicted a female child wearing a long-sleeve shirt and underwear, and she was lying in bed and

27    moving.  An adult male hand touches her abdominal area.  "Alandavis1661" said he had just

28    taken the video.  The time stamp of the chat would have been 6:59 a.m., Arizona Time.

1  Approximately one minute later, "alandavis1661" sent another video of an adult male
2  masturbating his penis right near the girl.   The girl is wearing the same clothing, and the bed
3  comforter matches the one described in paragraph 15.   Neither video showed the girl's face or
4  the man's face.   The girl appeared to be consistent with a five-year-old.

5  18.   After receiving these two videos, the undercover TFO requested "alandavis1661" send a
6  video holding up two fingers in front of the child to prove he really has access to her.   Kik user
7  "alandavis1661" responded with a video holding up two fingers and touching the leg of the same
8  girl dressed in the same clothes, who is still in bed.   He then asks the TFO to send a picture of
9  his daughter's ass live.

10  19.   The Kik user "alandavis1661" told the TFO that he can do whatever he wants for him
11  because he has her with him and indicated that he doesn't save his daughter's videos and only
12  does them live.   [Note:   In the Kik context, doing a video "live" means that the user is taking
13  the video real-time via the Kik app, but the video will not save to his gallery.]   At approximately
14  7:20 a.m., "alandavis1661" stated that he needs to get her up now.   A minute later, he send a
15  video of an adult male masturbating near the same girl, and then the male touches the child's
16  buttocks.   She is still wearing the same shirt and underwear in this video.

17  20.   On December 13, 2021, at approximately 7:23 a.m. Arizona Time, "alandavis1661" sent
18  another video to the undercover TFO.   In this video, the adult male is lying next to the same girl
19  with the man behind the girl as they lay on their sides.   His erect penis is pulled out of his shorts
20  and is touching her buttocks area.   He pushes his penis and body against her and she moves.
21  The child is wearing the same underwear in the video.   In this video, neither the girl's face, nor
22  the man's face is visible.   The girl looks consistent with a five-year-old girl.

23  21.   During the chat, "alandavis1661" states that he is on Pacific time zone.   He also sent a
24  picture of an adult female engaged in a sex act, who he stated was his wife, and a picture of a
25  girl dressed in a cheerleading or dance costume and stated it was his 15-year-old.   The woman's
26  face was only partially visible and could not be identified.

27  22.   On December 13, 2021, an emergency disclosure requested was served on Kik requesting
28  subscriber information and IP history for the username "alandavis1661".   On December 13,

1  2021, Kik provided data responsive to the request.  The Kik account with the username
2  "alandavis1661" and display name "Alan Davis" was registered with the email address
3  alandavis1488@gmail.com and provided a device description of an iPhone.  IP Addresses
4  between November 13, 2021 and December 13, 2021 were provided by Kik.  A review of the
5  IP Addresses showed that several of the IP Addresses were mobile or from IP Address
6  70.162.61.146, which resolved to Cox Communications.

7  23.    On December 13, 2021, an emergency disclosure request was served on Cox
8  Communication requesting subscriber information for the IP Address 70.162.61.146.  They
9  responded with the subscriber of Lisa Madrid, with service address 31241 N. Gecko Trail, San
10  Tan Valley, AZ 85143.

11  24.  On December 13, 2021, an emergency disclosure request was served on Verizon for the IP
12  Address 174.205.241.91, which was associated with the Kik account "alandavis1661" on
13  December 13, 2021 at 14:58:51 UTC.  Verizon responded to the request and identified the
14  associated number of (623)533-1637.  They provided subscriber information to this phone
15  number, which is in the name of JEFFREY A. DAVIS as SUBJECT PREMISES.

16  25.  Motor Vehicle Department records showed that JEFFREY ALAN DAVIS and Lisa M.
17  Davis (former names Lisa M. Hassebrook and Lisa M. Madrid) list their address and have
18  vehicles registered to 31241 N. Gecko Trail, San Tan Valley, AZ 85143.  Specifically,
19  JEFFREY ALAN DAVIS has a 2016 Hyundai Tucson, bearing AZ license plate CTV5927 co-
20  registered in his name Lisa M. Davis' name at this address.

21  26.  On December 13, 2021, at approximately 11:45 a.m., surveillance was conducted at
22  SUBJECT PREMISES.  A maroon colored Hyundai sedan, bearing California license plate
23  8VSP705 was parked in the driveway.  An adult male, believed to be JEFFREY ALAN DAVIS
24  was loading bags and items into the trunk of the vehicle and then left the residence.  A check of
25  the license plate revealed that it is registered to a 2021 Hyundai with a registered owner of P V
26  Holding Corp., 5721 W. 96th Street, Los Angeles, CA 90045.  It is believed that P V Holding
27  Corp., is part of Avis Rental Cars.

28  27.  A search of Pinal County Assessor records shows that JEFFREY A. and LISA M. DAVIS

1   are the current owners of 31241 N. Gecko Trail, San Tan Valley, AZ 85143.

2   28.   A search of Facebook located accounts belonging to "Lisa Hassebrook Davis and "Jeff

3   Davis".   On December 5, 2021, there are photos of the two of them with "their" little girl, at

4   what appears to be her 5th birthday party.

5                                   **FORFEITURE**

6   29.   For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the

7   forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to

8   criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 21

9   U.S.C. § 853(f).

10   30.   Section 2253 provides, in relevant part:

11                       (a) Property subject to criminal forfeiture -

12                             (1) any visual depiction described in section 2251, 2251A, or 2252, 2252A,

13                             2252B, or 2260 of this chapter, or any book, magazine, periodical, film,

14                             videotape, or other matter which contains any such visual depiction, which

15                             was produced, transported, mailed, shipped or received in violation of this

16                             chapter;

17                             (2) any property, real or personal, constituting or traceable to gross profits

18                             or other proceeds obtained from such offense, and;

19                             (3) any property, real or personal, used or intended to be used to commit or

20                             to promote the commission of such offense or any property traceable to such

21                             property.

22   31.   Pursuant to these Rules, I request immediate forfeiture of any property, including items of

23   electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child

24   pornography or online child exploitation.

25                                   **CONCLUSION**

26   32.   Based on the foregoing, there is probable cause to believe that JEFFREY ALAN DAVIS,

27   or another person located at the SUBJECT PREMISES, is utilizing or has utilized the Kik

28   username "alandavis1661" in violation of Title 18 U.S.C. § 2251 and 2252, which, among other

1   things, makes it a federal crime for any person to distribute, possess, or produce child

2   pornography, and that the property, evidence, fruits and instrumentalities of these offenses, more

3   fully described in Attachment B of this Affidavit, are located at the SUBJECT PREMISES, as

4   more fully described in Attachments A.

5

6   Respectfully submitted,

7

8

9   Candace M. Rose
    Special Agent

10   Federal Bureau of Investigation

11

12   Sworn and subscribed electronically this 13th day of December, 2021.

13

14

15   HONORABLE MICHELLE H. BURNS
    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28